UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WENDELL A. GRANDERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-0536-B |
| | § | |
| JP MORGAN CHASE & CO., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment (doc. 20) filed by Defendant JP Morgan

Chase & Co. ("Chase") on May 23, 2014, as well as a Motion for Summary Judgment (doc. 40) filed

by Plaintiff Wendell A. Granderson ("Granderson") on November 7, 2014. For the reasons stated

below, Chase's Motion is **GRANTED** and Granderson's Motion is **DENIED.**

## I.

## BACKGROUND[1]

A.    *Factual Background*

Granderson, an African-American male, brings this lawsuit against Chase, alleging that he

was discriminated against on account of his race and terminated in retaliation for engaging in

protected activity. Doc. 1, Ex. 3, Orig. Pet. 2. Granderson maintains that Chase's actions constitute

race and color discrimination as well as unlawful retaliation under Title VII of the Civil Rights Act

---

[1] The Court draws its factual account from the parties' pleadings, summary judgment briefs, and evidentiary submissions. Unless characterized as a contention by one of the parties, these facts are undisputed.

of 1964, 42 U.S.C. § 2000e-2 *et seq.* and Texas Labor Code § 21.001 *et seq. Id.* at 1, 6.[2]

Granderson first began working for Chase in June 2006 as a settlement analyst through a temporary staffing agency. *Id.* at 3. He was subsequently offered a full time, permanent position and became a Fund Accounting Specialist at Chase's Institutional Fund Accounting Services (IFAS) unit in late 2007. *Id.*; Doc. 21, Chase Mot. for Summ. J. Br. ("Chase Br.") 6. Granderson's primary responsibilities included preparing, validating, and finalizing accounting documents for Chase's clients' portfolios. *Id.* (citing Doc. 43, Granderson Deposition ("Granderson Depo."), Chase Supp. App. 6). Granderson was expected to process a certain number of accounts while adhering to the department's deadlines. *Id.* at 7; Doc. 40, Granderson Affidavit ("Granderson Aff."), Granderson App. 5. He was also required to ensure that all documents relating to his assigned accounts were properly filed, as well as report any complications or issues to his supervisors. *Id.*

Granderson contends that he performed his duties well, and that he received positive performance reviews from December 2007 until late 2008, when a new management team was placed in charge of his department. Orig. Pet. 3. Beginning in mid-2008, the manager supervising Granderson's work was Stephanie Hughes, who was then replaced by James Fremder in 2009. Chase Br. 7. In 2010, Granderson's manager became Lobsang Avah. *Id.* In late 2009, Benjamin Hildebrand became the supervisor to all fund accounting specialists, and therefore oversaw Granderson as well as Granderson's next-level managers. *Id.*; Granderson Aff., App. 2. While Granderson alleges that

---

[2] Because Texas Labor Code § 21.001 *et seq.* is intended to mirror federal legislation, federal precedent is authoritative in interpreting discrimination claims under the Texas Labor Code. Tex. Labor Code § 21.001(1); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999); *NME Hosps., Inc. V. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) (citing *Schroeder v. Tex.*, 813 S.W.2d 483, 485 (Tex. 1991)). Therefore, the Court analyzes the claims concurrently.

he performed his work responsibilities in accordance with the department's expectations, Chase contends that Granderson exhibited many performance issues, as he failed to complete many tasks in a timely manner, did not alert management to certain critical issues, and committed substantial errors. Orig. Pet. 3; Granderson Aff., App. 1–2; Chase Br. 7–9. Similarly, whereas Granderson argues that he received adequate performance reviews prior to the arrival of Hildebrand in 2009, Chase maintains that Granderson had never received positive reviews, either before or after Hildebrand's arrival. *Id.* Granderson insists that he excelled at his responsibilities even under the new management, clarifying that his poor evaluations did not reflect his performance. Orig. Pet. 4. He maintains that the discrepancy between his own assessment of his work and his yearly performance evaluations is due to racially discriminatory acts carried out by Chase, and specifically by Hildebrand. *Id.* at 3.

Beginning in August 2010, as a result of his difficulties completing tasks in accordance with Chase's expectations, Granderson was placed on a plan that required him to regularly meet with his supervisors, Lobsang Avah and James Fremder, to discuss opportunities for improvement. Chase Supp. App. 55, 72–84. Despite his supervisors' involvement, Granderson continued to exhibit work performance issues throughout 2010, as he neglected to follow department procedures regarding attire, arrived to work late without informing his supervisors, and committed several errors, including one that, if not corrected by management, would have resulted in an $80 million valuation error in an account worth $132 million. Doc. 40, Written Warning, Granderson App. 36–37. As a result, Granderson was issued a written warning (the "Written Warning") in October 2010, which detailed the issues described above and placed him on a 60-day restriction that made him ineligible for promotions or other benefits. *Id.*; Chase Supp. App. 85. In an October 29, 2010 email to Chase

Human Resources employee Marielo Recio, Granderson challenged the Warning and accused Hildebrand of issuing it in retaliation for Granderson's alleged reporting of other employees' misconduct. Chase Supp. App. 85. Following Granderson's complaint to Human Resources, the Warning was revised and reissued in December 2010. Written Warning, Granderson App. 36–37.

In early 2011, the position for Fund Accounting Manager (which Granderson refers to as the "Team Leader" position) became available. Orig. Pet. 4; *see* Chase Supp. App. 40. Granderson alleges that Chase discriminated against him by refusing to promote him to this position and by instead promoting Steven Behnke, a white male. Orig. Pet. 4.

Due to Granderson's lack of improvement following the Written Warning, and in light of additional errors he made in completing essential tasks on client accounts, Hildebrand issued Granderson a Recommendation for Termination on April 11, 2011. Doc. 40, Recommendation for Termination, Granderson App. 62–65. The Recommendation for Termination detailed the persistent difficulties Granderson had exhibited in completing his work in the time and manner expected by his department throughout his employment at Chase. *Id.* Granderson was subsequently terminated on April 14, 2011. Orig. Pet. 5. He alleges that this termination constitutes unlawful retaliation for his decision to complain to Human Resources employee Mariela Recio in October 2010 regarding the Written Warning. *Id.* Granderson further asserts that his termination is also retaliation for his complaint to Mr. Fitzpatrick, Hildebrand's supervisor, regarding Hildebrand's discriminatory conduct. *Id.*

Based on these events, Granderson asserts that Chase violated Title VII of the Civil Rights Act of 1964 as well as the Texas Labor Code by discriminating against him on the basis of race and color and by retaliating against him for complaining about this discrimination. *Id.* at 6. He maintains

that, as a result of Chase's actions, he suffered financial ruin, damage to his professional reputation, humiliation, and other losses. *Id.* Thus, Granderson requests that the Court enjoin Chase from continuing its unlawful employment practice and award him attorneys' fees as well as the amount of $110,000 as damages for two years' worth of lost wages and lost retirement benefits. *Id.*

B.     *Procedural Background*

On August 23, 2011, Granderson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Orig. Pet. 2. He then received a notice of right to sue on September 24, 2012. *Id.* On December 21, 2012, Granderson filed his Original Petition in the 298th Judicial District Court of Dallas County, Texas. *Id.* at 1. Chase removed the case to this Court on February 1, 2013. Doc. 1, Notice of Removal.

On May 23, 2014, Chase filed the present Motion for Summary Judgment (doc. 20), contending that Granderson's claims are unsupported by evidence and fail as a matter of law. *See* Chase Br. Granderson failed to respond to this Motion, and the Court issued a Show Cause Order (doc. 24) on July 30, 2014, directing him to explain this omission. Following the Show Cause Order, the related briefings, and the ensuing October 8, 2014 hearing, Granderson was ordered to file a response to Chase's Motion for Summary Judgment by November 7, 2014. Doc. 36. Pursuant to this order, Granderson filed a Motion for Summary Judgment and Objection to Defendant's Motion for Summary Judgment (doc. 40) on November 7, 2014. Chase in turn filed a Reply (doc. 44) to Granderson's Response as well as a Response (doc. 41) to his Motion for Summary Judgment on November 21, 2014. Granderson filed a Motion for Leave to File Sur-Reply (doc. 45) to Chase's Reply on December 1, 2014, to which Chase responded (doc. 49) on December 22, 2014. Granderson filed a Reply (doc. 48) to this Response on December 12, 2014. The Motions are now

ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material facts, . . . by

conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotations omitted). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## III.

## ANALYSIS

Based on Granderson's Original Petition, Chase identifies the following claims of race discrimination and retaliation under Title VII, 42 U.S.C. § 2000e-2 *et seq.*: (1) a claim for failure to promote, in which Granderson asserts that Chase discriminated against him by refusing to promote him to the Team Leader role; (2) a discriminatory performance evaluation claim, in which Granderson alleges that his performance evaluations were racially discriminatory; and (3) a retaliation claim, in which Granderson contends that Chase retaliated against him for complaining about the alleged discrimination he suffered. Chase Br. 13–14. Chase moves for summary judgment with respect to all these claims. However, in his Sur-reply, Granderson asserts that "he has not made any independent claim for discriminatory performance review," but rather discusses Chase's allegedly discriminatory performance reviews as part of his claim for failure to promote. Doc. 45, Granderson

Mot. for Sur-reply and Sur-reply 2. In light of Granderson's assertion that he does not have a distinct claim for discriminatory performance evaluations, the Court organizes its discussion of the remaining claims accordingly. The Court thus evaluates the arguments and evidence pertaining to: (1) Granderson's claim for failure to promote, which includes various allegations concerning the allegedly discriminatory performance reviews; and (2) Granderson's retaliation claim. Before addressing the merits of the parties' arguments with respect to these causes of action, the Court must first clarify what filings are part of the summary judgment record and address Granderson's objections to Chase's evidentiary submissions.

A.     *The Record Before the Court*

As a preliminary matter, the Court must untangle the filings submitted by the parties in response to Chase's Motion for Summary Judgment so as to determine which documents are part of the record. As previously explained, Chase filed the present Motion for Summary Judgment (doc. 20) on May 23, 2014. Following an Order to Show Cause and a related hearing, Granderson was ordered to file a response to Chase's Motion for Summary Judgment by November 7, 2014. Doc. 36. However, rather than file a response, Granderson filed a document purported to be both his own Motion for Summary Judgment as well as a Response to Chase's Motion for Summary Judgment. Doc. 40. Granderson did not seek leave of Court to file this Motion, even though the deadline for such dispositive motions—May 23, 2014—had passed. Moreover, even though Granderson's filing is styled as both a response and a motion for summary judgment, the contents and arguments of the filing resemble those of a response rather than those of a motion for summary judgment; in the filing, Granderson objects to Chase's evidence and arguments but fails to clearly articulate why he has carried his burden on his own Motion for Summary Judgment. In accordance with its Amended

- 8 -

Scheduling Order (doc. 15), which set the deadline for dispositive motions to May 23, 2014, and in the interest of clarity in the record, the Court determines that Granderson's November 7, 2014 filing is to be construed as a Response to Chase's Motion for Summary Judgment rather than as his Motion for Summary Judgment. Accordingly, it will be referred to as "Granderson's Response." However, the Court will consider all the arguments and evidence discussed in this filing.

In response to Granderson's ambiguous November 7, 2014 filing, Chase submitted two sets of documents: (1) a Reply (doc. 44) addressing the elements of Granderson's filing that respond to Chase's Motion for Summary Judgment; and (2) a Response (doc. 41) and Brief in Support (doc. 42), relating to any portions of the filing that could be construed as Granderson's Motion for Summary Judgment. Chase's Response in large part reiterates the arguments it had raised in its Motion for Summary Judgment; however, along with this Response, Chase also submitted additional evidence addressing some of the deficiencies and objections Granderson had noted regarding its summary judgment evidence. In light of the confusion created by Granderson's November 7, 2014 filing, the Court will consider all of the responsive documents submitted by Chase. However, because the Court has determined that Granderson's filing is properly construed as a response rather than as a motion for summary judgment, Chase's "Response" and briefing in support (docs. 41 and 42) will be construed as its Supplemental Briefing. The evidence submitted with this Supplemental Briefing (doc. 43)—part of which is duplicative of that which Chase had already presented—will thus replace the evidence Chase initially offered along with its Motion for Summary Judgment of May 23, 2014, and will therefore be referred to as its "Supplemental Appendix."

Reacting to Chase's decision to file the two documents discussed above, Granderson also sought to file two sets of responsive filings. Accordingly, he filed: (1) a Reply (doc. 48) to Chase's

Response; and (2) a Motion for Leave to File Sur-reply and Sur-reply (doc. 45) to address the additional evidence submitted by Chase. Along with the Motion for Leave to File Sur-reply and Sur-reply, Granderson submitted additional evidence (doc. 47), part of which had already been submitted to the Court. The Court first notes that the Reply and the Motion for Leave to File Sur-reply and Sur-reply are nearly identical. Therefore, in light of the Court's decision to consider all of Chase's filings in response to Granderson's November 7, 2014 submission, the Court similarly determines that Granderson's various responsive filings must also be considered. The Court accordingly **GRANTS** Granderson's Motion for Leave to File Sur-reply (doc. 45) and considers all appended evidence.

In sum, after fully considering the complications that arose in the briefing of this matter, the Court determines that all filings and evidence submitted following Chase's Motion for Summary Judgment can be considered as part of the summary judgment record, subject to the evidentiary objections discussed below. Therefore, the documents filed in response to Chase's Motion for Summary Judgment will be referred to as follows:

(1) Chase's Motion for Summary Judgment (doc. 20), Brief in Support (doc. 21), and Appendix (doc. 22);

(2) Granderson's Response and related evidence (doc. 40);

(3) Chase's Reply (doc. 44);

(4) Chase's Supplemental Briefing (doc. 42) and its Supplemental Appendix (doc. 43);

(5) Granderson's Reply (doc. 48); and

(6) Granderson's Sur-reply (doc. 45) and related evidence (doc. 47).

B.    *Evidentiary Objections*

Before proceeding to the substance of the summary judgment filings, the Court considers

Granderson's objections to some of the evidence submitted by Chase. Granderson first objects to Chase's Exhibit A, submitted with its Motion for Summary Judgment. Doc. 40, Granderson Resp. 7; doc. 22, Chase App. in Support of its Mot. for Summ. J. ("Chase App.") 1–34. Granderson contends that the exhibit, which is a transcript of Granderson's deposition, is inadmissible, as it is not certified by any deposing officer. Granderson Resp. 7. Under Federal Rule of Civil Procedure 30(f), the deposing officer taking a deposition must certify that the witness was duly sworn and that the deposition transcript is a true record of the testimony given by the deponent. Granderson aptly notes that Exhibit A is not signed by the deposition reporter. *Id.*; Chase App. 23. However, the deposition indeed contains a dated certification page stating that Granderson was "duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness." Chase App. 22. The certification page further contains the name and contact information of the deposition reporter; it simply lacks the reporter's signature. *Id.* at 23.

Responding to this objection in its Supplemental Briefing and Appendix, Chase submits a second copy of the exhibit in question, signed by the deposition reporter. Doc. 43, Chase Supplemental Appendix ("Chase Supp. App.") 23. As previously explained, Chase's supplemental briefing and evidence (docs. 41, 42, and 43) are part of the record and are construed as its Supplemental Briefing (docs. 41 and 42) and Supplemental Appendix (doc. 43). Because the Court has determined that, in the interest of clarity and fairness, Chase's Supplemental Appendix supercedes the evidence it previously submitted along with its Motion for Summary Judgment, and because Chase's Supplemental Appendix addresses the objection raised by Granderson, the Court finds that this evidentiary issue is resolved.

Next, Granderson objects to documents Chase submits as Exhibit 1 and as the attachment

to Exhibit B, appended to its Motion for Summary Judgment.[3] Due to the confusing labeling of Chase's exhibits, the Court will only describe the documents in question using their appendix page numbers ("App. ___"). To clarify, Granderson objects to the following employee records: (1) a version of the Written Warning dated November 26, 2010, Chase App. 24–26; (2) records of eleven meetings between Granderson and his supervisors that took place from August 2010 to February 2011 pursuant to Granderson's performance improvement plan, Chase App. 27–34; and (3) the Recommendation for Termination of Granderson's employment, Chase App. 42–45. Granderson Resp. 8. Granderson asserts that these documents are inadmissible hearsay and are not subject to the business records exception under Federal Rule of Evidence 803(6). *Id.*

As in the case of Granderson's objections to Chase's submission of his deposition, discussed above, Chase has addressed these evidentiary issues in its Supplemental Appendix (doc. 43), filed along with its Supplemental Briefing. In this Supplemental Appendix, Chase presents a business records affidavit that complies with the requirements of Federal Rule of Evidence 803(6). Chase Supp. App. 47–48. The affidavit is followed by the following documents: (1) the Recommendation for Termination of Granderson's employment, Chase Supp. App. 49–52; (2) a version of the Written Warning dated and revised on December 6, 2010, Chase Supp. App. 53–54; (3) Granderson's yearly performance evaluations while employed at Chase, Chase Supp. App. 56–70; (4) a statement by Hildebrand, dated September 16, 2010, reporting on the $80 million valuation error committed by

---

[3] The Court notes that Chase's index of exhibits initially submitted with its Motion for Summary Judgment is confusing and in no way corresponds to the labels and order of the attached exhibits. The index lists Exhibit B, Affidavit of Benjamin Hildebrand, as ranging from App. 23 to App. 33, but in reality is composed of Exhibit 1 containing employment records (App. 24–34) and the actual Exhibit B, Affidavit of Benjamin Hildebrand (App. 36–41). Following this is yet another "Exhibit A," which contains the Recommendation for Termination of Granderson's employment (App. 42–45). Due to this confusing labeling, the Court will refer to these documents solely by their Appendix page number ("App. ___").

Granderson, Chase Supp. App. 71; (4) records of thirteen meetings Granderson had with his supervisors between August 2010 and March 2011 pursuant to his performance improvement plan, Chase Supp. App. 55, 72–84; (5) an email from Granderson to Human Resources dated October 29, 2010, Chase Supp. App. 85;[4] and (6) records of communications between Granderson and Human Resources, Chase Supp. App. 86–91. Interestingly, in its Supplemental Appendix, Chase also resubmits the documents that Granderson objects to, even though it also chose to address the objections by presenting a business records affidavit along with different versions of the documents in question. *See* Chase Supp. App. 24–34; 42–45. The Court thus excludes from the record the documents contained in Chase's Supplemental Appendix pages 24–34 and 42–45.

Based on the above reasons, the Court overrules Granderson's objections as to the alleged unverified deposition testimony and hearsay statements. Because Chase has provided supplemental briefing and evidence that addresses Granderson's objections, the Court will rely on the evidence included in Chase's Supplemental Appendix (doc. 43) when evaluating the merits of its Motion for Summary Judgment.[5]

---

[4] In his Sur-reply, Granderson objects to this email and denies that he sent it. Doc. 45, Granderson Sur-reply 1–2. Because the email satisfies the business records requirements of Federal Rule of Evidence 803(6) and because Chase has submitted the appropriate accompanying affidavit, the document is admitted. Moreover, the document in question contains Granderson's own email, and is therefore also admitted as an admission by a party-opponent under Federal Rule of Evidence 801(d)(2). The Court overrules Granderson's objection with respect to the email and likewise overrules all other similar objections included in the Sur-reply, as they are baseless. *Id.* at 4–6.

[5] Chase raises its own objections to the summary judgment evidence presented by Granderson in support of his Response. Because these objections pertain to specific assertions in Granderson's Affidavit, the Court will address them when evaluating the arguments which the affidavit sections in question are intended to support. Chase Reply 8–11; Granderson Aff.

C.      *Failure to Promote Claim*

Granderson alleges that Chase engaged in race and color discrimination by refusing to promote him to the Team Leader position and by instead selecting Steven Behnke, a white male, for the promotion. Orig. Pet. 4–5. Granderson presents no direct evidence of discrimination. Accordingly, his failure to promote claim will proceed under the *McDonnell-Douglas* burden-shifting framework. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Under this framework, a plaintiff must first formulate a *prima facie* case of discrimination. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). To establish a *prima facie* case of race or color discrimination based on failure to promote, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position he sought; (3) despite his qualification, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek an individual with the plaintiff's qualifications. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 324 (5th Cir. 2002); *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). If the plaintiff is able to build a *prima facie* case of discrimination, the burden then shifts to the defendant, who must provide a legitimate, nondiscriminatory reason for its actions. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). If the defendant is able to provide such a reason, the presumption of discrimination disappears. *Id.* The plaintiff then has the opportunity to provide evidence that the defendant's reason is untrue and merely a pretext for discrimination. *Id.*

Granderson asserts a claim for race discrimination because Chase did not promote him to the Team Leader position that became available in early 2011. Orig. Pet. 4–5. Chase does not contest that Granderson was a member of a protected class or that he was not promoted. Instead, Chase argues that Granderson cannot establish a *prima facie* case for discrimination because he cannot

present evidence demonstrating: (1) that he applied for the position or that it would have been futile for him to do so; and (2) that he was qualified for the position. Chase Br. 15–19. Granderson responds that he could not be considered for the promotion because of a discriminatory warning he received, which made him ineligible for such promotions. Granderson Resp. 8–10. Granderson further insists that he was indeed qualified for the position and that any negative performance reviews that may have kept him from the promotion were discriminatory. *Id.* at 12–13. Chase disagrees and asserts that, even if Granderson were able to articulate a *prima facie* case of discrimination, it had legitimate, non-discriminatory reasons for not promoting Granderson, and it notes that there is no evidence of Granderson being treated less favorably than other non-African American employees. Chase Br. 17–19. Granderson, however, maintains that his negative performance reviews were pretextual and inaccurately reflected his level of performance.[6] For the reasons that follow, the Court agrees with Chase and **GRANTS** its Motion for Summary Judgment on Granderson's failure to promote claim.

### 1.   Application for the Team Leader Position

To establish a *prima facie* case for failure to promote, the plaintiff must show that he applied for the position or "that such an application would have been a futile gesture." *Shackleford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999); *see also Grice v. FMC Techs., Inc.*, 216 F. App'x

---

[6] In its Motion for Summary Judgment, Chase identifies two distinct claims for discrimination (in addition to the claim for retaliation): (1) a failure to promote claim, in which Granderson claims Chase discriminated against him in refusing to promote him to the Team Leader role; and (2) a claim for discriminatory performance evaluations, in which Granderson alleges that his performance evaluations were racially discriminatory. Chase Br. 13–14. However, in his Sur-reply, Granderson indicated that "he has not made any independent claim for discriminatory performance review." Granderson Sur-reply 2. Accordingly, the Court evaluates the allegations pertaining to the performance reviews as part of Granderson's failure to promote claim.

401, 406 (5th Cir. 2007) (per curiam). To demonstrate the futility of applying for a certain position, the plaintiff must show that "he was deterred by a known and consistently enforced policy of discrimination." *Shackleford*, 190 F.3d at 406. Additionally, "[i]t is not legally sufficient or legitimate for an employer to reject an employee who does not have notice or an opportunity to apply for a promotion." *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 570 (5th Cir. 1988).

The parties do not dispute that Granderson did not apply for the Team Leader position. Chase Br. 16; Granderson Resp. 9. Chase, however, indicates that Granderson has not presented evidence that a manager discouraged him from applying or expressed a negative opinion about him applying for the position. Chase Br. 16.

In response, Granderson does not present evidence of a "known or consistently enforced policy of discrimination" that deterred him from applying to the position, but rather asserts two other reasons why he did not seek the promotion. First, Granderson explains that he could not have applied for the Team Leader position, as Chase did not have an internal application system for promotions. Granderson Resp. 9. Granderson further states, without presenting evidence in support, that Chase's internal promotions were typically done by subjective supervisor selection from the immediate hierarchy below the position that is to be filled. *Id.* He thus explains that it would have been futile for him to apply for the position when there was no procedure for such applications. *Id.* at 9–10.

Next, Granderson asserts that he could not have expressed interest in the position, as he was issued a written warning that made him ineligible for promotions precisely during the time that the Team Leader position became available. Granderson Resp. 9; Granderson Aff., App. 4, ¶¶ 28–37. Granderson presents a copy of this written warning (the "Written Warning"), dated December 6,

2010, which describes specific examples of Granderson's performance problems and the dates these issues occurred. Written Warning, Granderson App. 36–37. The Written Warning also includes a list of expectations and a plan of action for Granderson's improvement, as well as an admonishment that failure to maintain a satisfactory level of performance may lead to further "corrective action," including termination. *Id.* at App. 37. Lastly, the Written Warning indicates that Granderson "is not eligible to receive a promotion or transfer, or to apply for tuition assistance or a position through job posting during the written warning restrictions period." *Id.* In his summary judgment affidavit, Granderson explains that Hildebrand intentionally delayed the issuance of the Written Warning until the Team Leader position became available so as to preclude Granderson from being considered for the position. Granderson Aff., App. 4.

In its Reply, Chase notes that Granderson's argument regarding the Written Warning is based on speculation and is further contradicted by other competent evidence in the record. Doc. 44, Chase Reply 2. Chase submits a copy of an email Granderson sent to Chase Human Resources employee Mariela Recio on October 29, 2010, in which he complained about receiving the Written Warning. Chase Supp. App. 85. In this email, Granderson acknowledges that he received the Written Warning, as he informs Mariela Recio that he "has attached the Written Warning for [her] review." *Id.* The email also indicates that a document titled "written warn 10.20.10" was attached, thus demonstrating that the Written Warning at issue was dated October 20, 2010. *Id.* Granderson's email then proceeds to request a revision of the Written Warning and offers explanations for the work performance errors and problems that gave rise to this reprimand. *Id.* Chase further submits a Human Resources record that summarizes the various communications among Granderson, Mariela Recio, and other managers. *Id.* at App. 86–89. The record indicates that Mariela Recio

communicated Granderson's concerns regarding the Written Warning to Chase management. *Id.* at App. 86–87. Additionally, the record establishes that on December 10, 2010, Mariela Recio informed Granderson that "she had researched his concerns regarding the written warning and that it would stand," and that she "[a]lso advised him that the warning would be revised to reflect the overall performance issues." *Id.* at App. 86. Based on this evidence, Chase argues that the reason the Written Warning was revised and released at a later date was Granderson's discontent with the basis for the Warning. Chase Reply 3; Chase Supp. App. 86. Chase further asserts that any delay in issuing the Written Warning was not caused by a plan to render Granderson ineligible for the promotion, but rather resulted from Granderson's complaints about the Warning and Chase's subsequent investigation and revision of the Warning based on these complaints. Chase Reply 3.

The Court finds the arguments and evidence presented by Chase persuasive and concludes that there was no discriminatory plan that dissuaded or prevented Granderson from seeking the promotion to Team Leader. First, Granderson's argument that there was no application process that he could have followed for the Team Leader position does not indicate that Granderson's pursuit of the Team Leader position would have been futile because "he was deterred by a known and consistently enforced policy of discrimination." *Shackleford*, 190 F.3d at 406. There is no argument or evidence signaling the existence of a policy, or even an individual, who deterred Granderson from seeking the promotion or applying for the position. Granderson asserts, without presenting evidence in support, that Chase makes its promotion decisions based on rank. Even accepting Granderson's assertion that Chase followed an informal method of promoting employees rather than a structured application process, Granderson's ineligibility for the promotion was not due to a discriminatory system that rendered his interest in the promotion futile, but was rather due to Chase's system of

promoting the most qualified employees who had satisfactory performance records. *See* Hildebrand

Affidavit ("Hildebrand Aff."), Chase Supp. App. 40. Even if it were customary to promote the

employee with the highest rank, the summary judgment evidence indicates that Chase's promotions

were not carried out through a mechanical, undiscerning process, but were rather nuanced decisions

based on the overall performance and qualities of the employees. *Id.* Accordingly, as indicated in the

affidavit of Hildebrand, the Vice President for Institutional Fund Accounting Services at Chase, the

individual promoted to the supervisory role of Team Leader was selected because he "was a strong

performer and worked successfully as a Fund Accounting Specialist." *Id.*

The Court, however, acknowledges Granderson's argument that the Written Warning

functioned as a deterrent to his pursuit of the Team Leader position and was part of a discriminatory

plan calculated to make him ineligible for such promotions. Thus, the Court examines the issues

regarding this Written Warning in detail. The parties each submit a copy of the Written Warning,

dated and revised on December 6, 2010, which indicates that Granderson's 60-day restriction period

began on October 20, 2010. Written Warning, Granderson App. 36–37; Chase Supp. App. 53–54.[7]

---

[7] In its original appendix in support of its Motion for Summary Judgment, Chase submitted a Written Warning dated November 26, 2010. Chase App. 24–26. However, Granderson objected to this evidentiary submission on the ground that it was inadmissible hearsay and did not meet the requirements for a business records exception under Federal Rule of Evidence 803(6). Granderson Resp. 8. Accordingly, in its Supplemental Appendix, filed in response to Granderson's Motion for Summary Judgment and Objection to Defendant's Motion for Summary Judgment, Chase addressed Granderson's objections and submitted another version of the Written Warning, this time dated December 2010. Chase Supp. App. 53–54. In its discussion of these evidentiary issues, the Court concluded that the documents included in the Supplement Appendix pages 24–34 and 42–45 were to be excluded. Accordingly, the November 26, 2010 version of the Written Warning, Chase Supp. App. 24–26, was excluded and is not part of the record before the Court. As a result, the Court need not consider Granderson's additional argument that this version of the Written Warning is a forgery. Granderson Resp. 10–12. The Court notes, however, that the December 6, 2010 Written Warning (submitted by both Chase and Granderson) and the November 26, 2010 Written Warning (originally submitted by Chase and excluded from the record) are nearly identical in substance.

First, after considering the competent summary judgment evidence in the light most favorable to Granderson, the Court finds that the timing of the issuance of the Written Warning does not reveal a discriminatory intent to preclude Granderson from the Team Leader promotion. Chase has presented a copy of Granderson's own email to Human Resources employee Mariela Recio, dated October 29, 2010, in which he acknowledges that he received the Written Warning and that he was "reprimanded" on October 20, 2010, suggesting that he received the Warning on that date. Chase Supp. App. 85. In this email, Granderson provides explanations and excuses for his tardiness and his failure to alert his supervisors to certain critical matters on accounts for which he was responsible. *Id.* He further disputes the necessity of such a Warning for accounting errors that allegedly did not impact Chase's clients. *Id.* Lastly, he asserts that the Written Warning is itself a retaliation for his decision to report other employees' misconduct. *Id.* The related Human Resources record submitted by Chase reveals that Mariela Recio informed management of Granderson's disagreement with the Warning, and that management in turn decided to revise the Warning so as to clarify all the performance issues that had culminated in the need to issue such a restriction. *Id.* at App. 86–87. Granderson does not address the contents of this evidence directly, but rather claims it is inadmissible. Granderson Sur-reply 1–2, 4–6. In its review of Granderson's evidentiary objections, the Court previously rejected this argument, as it is without foundation. Therefore, the evidence demonstrates that the delay in issuing a revised Warning was not due to a discriminatory plan on behalf of management. Instead, it was specifically intended to acknowledge Granderson's discontent and offer him more extensive explanations as to why his performance was unsatisfactory.

Moreover, the Written Warning which Granderson presents in no way supports his claim that management delayed the Warning until December 6, 2010 so as to make him ineligible for the Team

Leader position. Granderson App. 36–37. The Written Warning indicates that it was revised on December 6, 2010. *Id.* at App. 36. However, the beginning date of the Written Warning's 60-day restriction period is listed as October 20, 2010, not the date the Warning was revised. *Id.* Thus, there is no indication that the Warning was revised so as to delay the beginning of the restriction period and render Granderson ineligible for any later promotion opportunities. Accordingly, the evidence indicates that there is no genuine issue of material fact as to whether the Written Warning was revised and delayed for an illegitimate, discriminatory purpose.

Second, the Court concludes, based on the substance of the comments included in the Written Warning, that this restriction was instituted for legitimate performance-related reasons, and was not as a veiled attempt to interfere with Granderson's advancement. The Written Warning is not merely a statement advising Granderson that his performance is unsatisfactory and that he is placed on a restriction that precludes him from seeking promotions. Instead, the Warning includes a report that describes in detail the series of incidents that culminated in the need to issue Granderson a formal warning and place him on a restriction. Written Warning, Granderson App. 36–37; Chase Supp. App. 53–54. The Written Warning explains that "[o]ver the past several months[,] Wendell [Granderson] has had continual performance issues ranging from missed deliverables to not escalating high risk issues." Written Warning, Granderson App. 36; Chase Supp. App. 53. The Warning then proceeds to detail the dates and other specifics of the incidents during which Granderson exhibited difficulties adhering to his department's procedures. *Id.* For example, on seven separate occasions between August and October 2010, Granderson failed to either complete a task on a certain account, missed a deadline, or neglected to alert his supervisors to an issue that needed particular attention. *Id.* In addition, the Warning notes that Granderson's "work

tardiness was erratic and [he] would sometimes come in the early afternoon without notifying the management team." Written Warning, Granderson App. 36–37; Chase Supp. App. 53–54. Though Granderson presents certain excuses in response to these issues, particularly with respect to his tardiness, the overwhelming message conveyed by the Written Warning is that Granderson displayed many unsatisfactory behaviors that required management's involvement. Therefore, even if Granderson could defend or explain some of the incidents listed, the evidence establishes that the Written Warning was the legitimate result of work performance issues, and was not an artificial attempt to preclude Granderson from seeking the Team Leader position. Accordingly, Granderson's argument that the Written Warning was a discriminatory and pretextual tactic for impeding his promotion to Team Leader is a mere speculation, wholly unsupported by the summary judgment evidence.

Lastly, while it is true that "[i]t is not legally sufficient or legitimate for an employer to reject an employee who does not have notice or an opportunity to apply for a promotion," there is no requirement that all performance issues be ignored and suspended so as to give all employees equal footing for a certain promotion when they in fact exhibit performance issues that make them unqualified for such advancement. *Bernard*, 841 F.2d at 570. In this case, the competent summary judgment evidence indicates that Granderson was not denied notice or opportunity to apply for the promotion; he was simply ineligible because of the repeated errors and unsatisfactory performance that led to a Written Warning and a 60-day restriction period.

For these reasons, the Court rejects Granderson's arguments that it would have been futile for him to seek the promotion to Team Leader and that Chase issued the Written Warning as a discriminatory attempt to preclude him from the promotion.

2.      Qualification for the Team Leader Position

Chase next argues that Granderson cannot demonstrate that he was qualified for the Team Leader position, as is required to establish a *prima facie* case of discrimination based on failure to promote. Chase Br. 17. Chase contends that Granderson was unqualified for his then current position—and, by extension, for the promotion to Team Leader—as he consistently failed to meet performance expectations. *Id.* In support, Chase presents Granderson's yearly performance evaluations, which are based on the following scale: (1) Needs Improvement; (2) Meets Expectations (Low), also referred to as Meets Low; (3) Meets Expectations, also referred to as Mid Meets; (4) Meets Expectations (High), also referred to as Meets Plus; and (5) Exceeds Expectations. *See* Chase Supp. App. 56–70; Granderson Aff., App. 2, ¶ 15. Granderson's yearly evaluations while employed at Chase were as follows:

• 2008: Meets Expectations (Mid Meets), Chase Supp. App. 56;

• 2009: Meets Expectations (Mid Meets), Chase Supp. App. 61;

• 2010: Needs Improvement, Chase Supp. App. 66.

*See* Chase Supp. App. 56–70.

Each yearly review also includes evaluations of the employee's performance on several distinct objectives. Based on the performance reviews presented by Chase, Granderson received the following evaluations on the objectives that were applicable within each respective evaluation period:

• 2008: 6 Meets Expectations (Mid Meets) and 2 Meets Expectations (Low Meets), Chase Supp. App. 56–58;

• 2009: 3 Meets Expectations (Mid Meets) and 2 Meets Expectations (Low Meets), Chase Supp. App. 61–63;

- 2010: 1 Meets Expectations (Low Meets) and 3 Needs Improvement, Chase Supp. App. 66–68.

*See* Chase Supp. App. 56–70.

Chase also presents the affidavit of Hildebrand, who oversaw Granderson as well as Granderson's direct supervisors, James Fremder and Lobsang Avah. *Id.* at App. 36–41. In his affidavit, Hildebrand discusses the reasons for Granderson's termination in April 2011 and describes how his performance failed to meet Chase's expectations. *Id.* at App. 38–40. He indicates that Granderson exhibited many difficulties at work, as he routinely failed to timely complete tasks on certain accounts; made errors that, if not corrected by other supervisors, would have resulted in significant losses for Chase's clients; neglected to follow department checklists and procedures; and did not alert his supervisors to issues that required greater attention. *Id.* at App. 37–40. In addition, Hilderbrand's affidavit indicates that Granderson "had been on a performance plan for several years with several managers." *Id.* at 36. Chase further presents the reports from thirteen meetings Granderson had with his supervisors between August 20, 2010 and March 10, 2011 pursuant to the improvement plan discussed in Hildebrand's affidavit. *Id.* at App. 55, 72–84. The reports indicate that during these meetings, Granderson's supervisors, James Fremder and Lobsang Avah, discussed opportunities for improving his performance, alerted him to issues he needed to address, and remarked that he had many difficulties correctly completing his tasks and adhering to the department's policies. *Id.*

In response to Chase's contention that Granderson was not qualified for the Team Leader position, as evidenced by his poor performance reviews, Granderson argues that the performance reviews were discriminatory and were mere pretexts for repressing Granderson's opportunities in the

department. Due to the confusing framing of Granderson's claims with respect to his performance reviews, the Court considers whether the performance reviews were discriminatory and "pretextual" even though Granderson has not yet established a *prima facie* case of discrimination and has not shifted the burden onto Chase to provide a legitimate reason for its actions. Granderson's *prima facie* case thus hinges in part on whether he was qualified for the Team Leader position, which in turn depends partly on whether Chase discriminated against Granderson in evaluating his performance.

Granderson claims that all his performance evaluations during which Hildebrand was his supervisor were discriminatory, and that in reality, he was qualified for the promotion to Team Leader. Granderson Resp. 12–13. Granderson points to his earnings and claims "[o]ne method by which [Chase's] employee's performance can be objectively reviewed is by increase in income." *Id.* at 12. Granderson presents his W-2 Forms for the years he was employed by Chase and argues that prior to Hildebrand becoming his supervisor, his earnings increased significantly (from $55,512.76 in 2008 to $57,175.03 in 2009), but subsequently decreased after Hildebrand's arrival in late 2009 (to $53,746.95 in 2010). *Id.*; Granderson App. 12–16.

Granderson further disputes any negative performance reviews by pointing to evidence of discrete instances when his performance was satisfactory. Granderson avers that "[i]n 2010, when [he] was allegedly falling behind, [he] pre-released his accounts ahead of most of his peers and got to help others." Granderson Resp. 12. In support, Granderson submits copies of emails he either sent to or received from managers or other employees. Granderson App. 38–60. These emails include brief communications thanking Granderson for completing a certain task on time or ahead of time, requesting that Granderson assist other employees on a particular issue, and demonstrating that Granderson communicated by email in a polite manner. *Id.* Based on this evidence, Granderson

argues that his negative reviews are incorrect and do not reflect his work performance. Granderson Resp. 12–13.

Lastly, Granderson argues that he was indeed qualified for the promotion to Team Leader, stressing that at the time the position became available, he "was in the correct employee hierarchy to be promoted." Granderson Resp. 9; Granderson Aff., App. 5, ¶ 39. Granderson points to his affidavit, in which he declares that "typically the promotion would go to a senior staff accountant such as myself." Granderson Aff., App. 5, ¶ 39.

In its Reply, Chase disputes Granderson's conclusions regarding his performance. First, Chase objects to Granderson's assertion in his affidavit that he received "good reviews" prior to Hildebrand's arrival. Chase Reply 4; Granderson Aff., App. 2. In support, Chase notes that Granderson never received a rating of "Exceeds Expectations" or "Meets Expectations (High)," the two highest performance ratings. Chase Reply 4; Chase Supp. App. 56–71.

With respect to Granderson's claim that the performance reviews were discriminatory, Chase insists that Granderson cannot demonstrate any sign of discrimination because he cannot show that other employees similarly situated to him were treated more favorably. *Okoye*, 245 F.3d at 512–13.[8] Employees are similarly situated—and can thus be used as comparators in such discrimination claims—if the employment actions at issue occur under "nearly identical circumstances." *Lee. v. Kansas City S. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009). Employment actions occur under nearly

---

[8] Because Chase originally interpreted this as a distinct claim, its arguments reflect the elements and burden-shifting framework of *McDonough-Douglas*. In light of Granderson's firm statement that he in no way alleges a claim for discrimination based on his performance reviews, the Court considers Chase's arguments for the specific purpose of determining whether the performance reviews were a discriminatory tactic to prevent Granderson from being promoted to Team Leader.

identical circumstances when the employees being compared hold the same job or responsibilities, share the same supervisor or have their employment status determined by the same person, and have essentially comparable violation histories. *Id.* Also, the "conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.*

Chase argues that Granderson fails to demonstrate that he was treated less favorably than other similarly situated employees. Chase Br. 19. Specifically, Chase contends that Granderson presents no evidence that "another employee wrongfully received a higher rating due to race or that any other similarly situated non-African American employee . . . with similar performance problems as Granderson" received higher ratings. *Id.* As evidence, Chase submits a portion of Granderson's deposition in which he indicated that his allegations were based on informal conversations with other employees. *Id.* at 19–20; Granderson Depo., Chase Supp. App. 10–11. Chase points to the following exchange in particular:

> Q: Okay. Now, you also mentioned earlier that white employees tended to have higher performance reviews; is that correct?
>
> Granderson: Absolutely.
>
> Q: How are you aware of the white employees' review scores?
>
> Granderson: We discussed them. There was also -- mainly, we discussed them. Not with managers around, but, you know, we would go to lunch together and we would discuss. You know, people knew.

Granderson Depo., Chase Supp. App. 10–11.

Chase further highlights another portion of Granderson's deposition, in which he stated that: (1) he never saw another employee's performance review; (2) he never saw whether allegedly

similarly situated employees received the same types of reprimands he claims he received after making similar errors; and (3) he did not supervise the work of other allegedly similarly situated employees, and was thus unaware of the kind of work they performed. *Id.* at App. 13–15.

Chase also acknowledges that Granderson testified to having seen an email containing performance rankings of other members of his department, which a supervisor had erroneously sent. Chase Br. 20; Granderson Depo., Chase Supp. App. 15. Granderson asserts that of the three employees with the highest performance reviews on Hildebrand's team, two were white. Orig. Pet. 3. Of the three employees with the lowest performance reviews in the same group, all were African American. *Id.* Chase notes, however, that during his deposition, Granderson stated that he was not privy to other co-workers' performance reviews and did not supervise their work. Chase Br. 20; Granderson Depo., Chase Supp. App. 15. Chase thus argues that these allegations are insufficient to demonstrate that Granderson was treated less favorably than other similarly situated employees. Chase Br. 20.

Lastly, Chase explains that its selection of Steven Behnke for the promotion in no way reveals any unfavorable treatment or discrimination toward Granderson, as Steven Behnke was promoted because he was better suited for the position. *Id.* at 18. Chase offers Hildebrand's affidavit in support, which indicates that Steven Behnke had a strong performance record and had worked successfully as a Fund Accounting Specialist. Hildebrand Aff., Chase Supp. App. 40. Accordingly, he was selected for the Team Leader role. *Id.* Chase thus maintains that its articulated reasons for its employment decision—that another employee was more qualified and displayed stronger skills than Granderson—are legitimate and nondiscriminatory.

After reviewing the relevant evidence presented on this matter, the Court concludes that

Chase has demonstrated that Granderson was not qualified for the promotion to Team Leader. Chase has presented sufficient evidence establishing Granderson's record of unsatisfactory performance; the yearly performance reviews, the performance improvement plan, and the Written Warning all indicate that Granderson exhibited many difficulties at work, as reflected in the documented instances of tardiness, significant errors, inability to complete certain tasks on time, and failure to highlight issues for supervisors. Such indications of poor performance reveal an employee's lack of qualification for a position and are sufficient to support an employer's decision not to promote him. *See Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903–04 (5th Cir. 2000); *Sreeram v. La. State Univ. Med. Ctr.-Shreveport*, 188 F.3d 314, 318–20 (5th Cir. 1999).

Moreover, Chase's evidence is sufficient to refute Granderson's contention that his performance evaluations were discriminatory and did not accurately reflect his work. First, Granderson's argument that Hildebrand discriminated against him and caused his earnings to decline finds no support in the record, as a reduction in income, without more, does not indicate racial animus. Granderson asserts—without providing explanation or authority—that earnings reflect performance. He then proceeds to explain, again without submitting evidence in support, that his increase in earnings between 2008 and 2009 was due to his improving performance, but that the decline in his earnings between 2009 and 2010 was due to his supervisor's discriminatory plot against him. Granderson thus deflects any responsibility for his poor performance reviews and instead argues that they are discriminatory. However, he presents no evidence to disprove the specific errors, omissions, and deficiencies that Chase documents in its reviews. Instead, Granderson offers excuses for his behavior and points to other satisfactory aspects of his work, thus sidestepping the actual performance issues that led to his ineligibility for the Team Leader promotion and eventual

termination.

Second, the emails Granderson submits reveal that he was able to adequately complete certain tasks, but they do not cast a doubt or raise an issue as to the validity of the negative performance reviews he received. The emails reflect discrete instances in which a supervisor approved Granderson's work or acknowledged the fact that Granderson completed a task early or in a timely manner. However, such positive communications do not contradict poor evaluations; just because Granderson performed certain tasks well does not indicate that he performed *most* tasks well. Similarly, just because Granderson received poor evaluations should not raise the presumption that *all* his work failed to meet expectations. Granderson was not terminated or denied the promotion because he made errors in all his work duties, but rather because he performed in an unsatisfactory matter when carrying out certain important duties. Moreover, the emails in which Granderson's supervisor thanked him for his work do not indicate that Granderson is without flaws or in no need of improvement. Indeed, a supervisor can both appreciate good aspects of an employee's work while recognizing the same employee's significant limitations. Therefore, the positive emails and the poor performance reviews are not mutually exclusive. However, they are also not of equal weight, as yearly performance reviews and repeated supervisor comments reflect a much broader view of Granderson's skills than a few isolated emails.

Third, Granderson's claim that he was the most qualified employee for the promotion is based on his understanding that he had the necessary rank for the promotion. This assertion is contradicted by the summary judgment evidence, which indicates that Granderson's rank may have been sufficient, but that his actual performance in that rank was inadequate, let alone of a level that would warrant a promotion to a higher rank. Through Hildebrand's affidavit, Chase demonstrates that the

individual promoted to the Team Leader position was sufficiently qualified, as he had a strong performance record and had worked successfully as a Fund Accounting Specialist. Hildebrand Aff., Chase Supp. App. 40.

Finally, Chase correctly indicates that Granderson is unable to produce evidence demonstrating that other employees similarly situated to him were treated more favorably in their performance reviews. *Okoye*, 245 F.3d at 512–13. There is no evidence to suggest that another employee with similar work performance problems received higher evaluations or other benefits or promotions.

The Court therefore finds that Granderson's claim is unsupported by actual evidence, but rather only clings to speculation and suspicion that is otherwise unfounded. Based on the reasons stated above, the Court finds that Chase has demonstrated that there is insufficient evidence to suggest that its failure to promote Granderson was due to discrimination or discriminatory performance reviews. Accordingly, the Court **GRANTS** Chase's Motion for Summary Judgment as to Granderson's failure to promote claim.

D.     *Retaliation Claim*

Lastly, Chase moves for summary judgment on Granderson's retaliation claim, asserting that Granderson can neither establish that he engaged in protected activity nor that there was a causal connection between any protected activity and his termination in April 2011. Chase Br. 21. Granderson disagrees and notes that he was terminated shortly after he complained of Hildebrand's conduct to Mr. Fitzpatrick, Hildebrand's supervisor. Granderson Resp. 14–15.

The *McDonnell-Douglas* framework applies to retaliation claims in which a plaintiff presents only circumstantial evidence of the alleged retaliation. *Montemayor v. City of San Antonio*, 276 F.3d

687, 692 (5th Cir. 2001). In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 610 (5th Cir. 2005).

A "protected activity" under Title VII includes: (1) opposition to any practice rendered unlawful by Title VII; and (2) participation in an investigation, proceeding, or hearing under Title VII or making a charge, testifying, or assisting in such activity. *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)); *Grimes*, 102 F.3d at 140. An "unlawful employment practice" is defined as the failure or refusal of an employer "to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An "adverse employment action" includes acts related to "hiring, granting leave, discharging, promoting, and compensating," but also encompasses any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *McCoy v. City of Shreveport*, 492 F.3d 551, 559–60 (5th Cir. 2007). To establish a causal link between the protected conduct and the adverse employment action, a plaintiff must show that "the employer's decision . . . was based in part on knowledge of the employee's protected activity." *Sherrod v. Am. Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998).

For the reasons that follow, the Court finds that Chase has not carried its burden in demonstrating that Granderson did not engage in a protected activity, but concludes that there is

no evidence of a causal connection between any alleged protected activity and an adverse action against Granderson. Accordingly, the Court **GRANTS** Chase's Motion for Summary Judgment on Granderson's retaliation claim.

    1.    <u>Protected Activity</u>

Granderson's assertion that he engaged in protected activity arises from the dispute over the Written Warning, previously discussed in the context of the failure to promote claim. Granderson insists that he engaged in protected activity under Title VII when he complained to Mr. Fitzpatrick, Hildebrand's supervisor, in February or March of 2011. Granderson Resp. 14; Granderson Aff., App. 6, ¶ 56. In Granderson's affidavit—his sole evidence supporting his claim—he avers that he complained to Mr. Fitzpatrick regarding Hildebrand's discrimination in delaying the Warning so as to make him ineligible for the Team Leader position. Granderson Aff., App. 6, ¶ 56. Furthermore, even though Granderson does not highlight this in his briefing, his deposition testimony indicates that he also believes he suffered retaliation as a result of his complaint to Human Resources employee Mariela Recio regarding his Written Warning. Granderson Depo., Chase Supp. App. 18.

Chase insists that Granderson has failed to produce any competent summary judgment evidence demonstrating that he complained of discrimination based on race or color while employed at Chase. Chase Br. 23. With respect to Granderson's allegation that his complaint to Mr. Fitzpatrick triggered his termination, Chase indicates that such a complaint cannot constitute a protected activity, as there was no unlawful employment practice to oppose. As has been previously established, Granderson received an initial version of the Written Warning in October 2010, complained about its contents to Mariela Recio later that month, and due to the review process that ensued, received a revised Written Warning in December 2010. *See* Chase Supp. App. 53–54, 85.

Moreover, Chase notes that any comments Granderson made to Human Resources employees were mere work-related complaints rather than allegations of race discrimination. Chase Br. 23. Chase acknowledges that Granderson complained about his Written Warning to Human Resources in 2010, but it observes that Granderson did not claim that management was motivated by discrimination in issuing the Warning. Chase Br. 23; Granderson Depo., Chase Supp. App. 18. The email from Granderson to Human Resources indicates that he contested the reasons for this reprimand, noting that it should not have been issued because the Chase client in question was not impacted by the errors he made. Chase Supp. App. 85. The email further states that the *warning* itself was "retaliation" because Granderson "exercised [his] obligation to report employee misconduct perpetrated by former manager Mr. Fremder." *Id.* Based on Granderson's deposition and his failure to present evidence other than his affidavit to support his claim, Chase maintains that Granderson did not engage in a protected activity by complaining to Mr. Fitzpatrick or Human Resources. Chase Br. 23.

Viewing the record in the light most favorable to Granderson, the Court finds that Chase has not established the lack of a genuine issue of material fact as to whether Granderson engaged in a protected activity. While there is sufficient evidence to demonstrate that Granderson did not engage in protected activity by complaining to Human Resources regarding the Written Warning, the record does contain evidence suggesting that Granderson engaged in protected activity by informing Mr. Fitzpatrick that Hildebrand had discriminated against him on account of his race.

First, with respect to Granderson's complaints to Human Resources in October 2010 regarding his Written Warning, the evidence demonstrates that he did not assert that he was discriminated against on account of his race. Rather, the evidence demonstrates that Granderson's

- 34 -

complaints to Human Resources focused on work-related issues and did not contain allegations of race discrimination. In his email to Mariela Recio, Granderson speculates that he was incorrectly issued the Warning for the following reasons: (1) retaliation for reporting the misconduct of another manager; (2) errors that did not affect the client; (3) wearing inappropriate attire; and (4) delays in completing work on accounts with set deadlines. Chase Supp. App. 85. Such workplace complaints do not constitute protected activities. *Brown v. United Parcel Serv., Inc.*, 406 F. App'x. 837, 840 (5th Cir. 2010) (stating that "Title VII does not protect opposition to all forms of unscrupulous conduct," and finding that plaintiff's complaints about "unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy," without claims of discrimination based on a protected characteristic, did not constitute protected activity); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) (finding that sending an email that complains of a deteriorating relationship between employees is not a protected activity because it does not refer to any conduct that could be considered discriminatory). Granderson's complaint to Human Resources demonstrates that he did not perceive himself to be the victim of race discrimination and further implies that, his defenses and excuses notwithstanding, he was aware that his conduct did not meet Chase's expectations. Additionally, the portion of Granderson's email alleging that the Written Warning itself was a retaliatory measure does not in any way expose a protected activity that occurred in response to an unlawful employment practice. Accordingly, Granderson's complaint to Human Resources regarding the issuance of his Written Warning does not qualify as a protected activity and cannot support a claim for retaliation.

Next, the Court examines Granderson's assertion that he "made a complaint of race discrimination against Hildebrand to Fitzpatrick." Granderson Resp. 14; Granderson Aff., App. 6.

Chase does not directly address this contention, but rather explains that such a complaint cannot constitute a protected activity because it "was nothing more than a last ditch effort to try to avoid termination by making a baseless claim of racial discrimination." Chase Reply 10–11. Chase thus appears to concede that Granderson made a "claim of racial discrimination." *Id.* Simply because Chase asserts such a complaint was "baseless" does not remove it from the realm of protected activity. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (finding that a plaintiff need not prove that the defendant's practices "were actually unlawful, but only that he had a 'reasonable belief that the employer was engaged in unlawful employment practices.'") (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981), *cert denied* 455 U.S. 1000 (1982)). Chase does not offer other arguments to show the absence of evidence in support of Granderson's claim. *See Latimer*, 919 F.2d at 303; *Little*, 37 F.3d at 1075. Accordingly, the Court finds that Granderson has provided sufficient evidence to indicate that he made a race discrimination complaint, and it further concludes that Chase has not carried its burden in establishing a lack of issue of material fact with respect to Granderson's protected activity.

2.      Causal Connection between the Protected Activity and the Adverse Action

The Court next considers Granderson's argument that he was terminated as a result of his complaints regarding Hildebrand and the Written Warning. Even though Granderson has not yet established a *prima facie* case of retaliation, the Court's inquiry into a possible causal connection between a protected activity and an adverse action must in fairness consider Granderson's arguments that Chase's performance-based reasons for his termination were a mere pretext. In his affidavit, Granderson asserts that "[a]round February or March of 2011, [he] made a complaint to Hildebrand's direct supervisor, Mr. Fitzpatrick, regarding Hildebrand discriminating against [him]."

Granderson Aff., App. 6, ¶ 56. He then emphasizes that he was terminated shortly thereafter, in April 2011. Granderson Resp. 14–15. Based on the proximity in time between his complaint and his termination, Granderson contends that there is a causal link between the two. *Id.*

Granderson raises another argument to demonstrate that Chase's performance-based reasons for terminating him were a mere pretext concealing retaliatory motives. Granderson Resp. 15. Granderson insists that, had his performance been the true reason for his termination, Hildebrand would have terminated him in 2010, "when his performance was allegedly poor." *Id.* Because he was not terminated then, but was rather terminated in April 2011, Granderson maintains that Hildebrand's sole reason for recommending his termination was to retaliate against him for complaining of race discrimination. *Id.*

Chase disagrees and argues that Granderson cannot establish a causal connection between his termination and his purported protected activity. Chase notes that its decision to terminate Granderson was not related in time or in circumstance to any complaints he made, but was rather based on repeated and well-documented work performance problems. Chase Br. 23–24. In support, Chase presents evidence that Granderson's termination was the result of his own inability to perform at the required level despite additional counseling and training by several managers. *Id.* at 24. Relying on Hildebrand's affidavit and Granderson's work history, as outlined in his Recommendation for Termination, Chase maintains that Granderson was provided assistance and support by management, including additional training, continued reduction of his workload over several months, and a transition to accounts that were less demanding. *Id.*; Hildebrand Aff., Chase Supp. App. 37–38, ¶¶ 10–14; Recommendation for Termination, Chase Supp. App. 49–52. The Recommendation for Termination indicates that Chase made numerous attempts to provide Granderson with

opportunities for improvement and success, but that Granderson's poor performance persisted despite the involvement of supervisors and the issuance of the Written Warning. Recommendation for Termination, Chase Supp. App. 49–52. Based on this evidence, Chase maintains that it had legitimate, nondiscriminatory reasons for terminating Granderson, and that the termination was in no way motivated by Granderson's complaints.

Based on the parties' arguments and the evidence presented, considered in the light most favorable to Granderson, the Court is unable to discern a causal link between Granderson's complaints regarding Hildebrand and his termination. Granderson asserts that the proximity in time between the two incidents indicates they are connected, but he submits no other evidence demonstrating the existence of a causal connection. Granderson Resp. 14–15. A plaintiff does not need to prove that his protected activity was the sole factor that motivated his employer's decision in order to establish a causal link between the protected activity and the adverse action. *Long v. Eastfield Coll.*, 88 F.3d 300, 3–4 n.4 (5th Cir. 1996). Close timing between the employee's protected activity and the adverse action may be sufficient to show a causal link; however, if the only evidence of a causal link is timing, the temporal proximity between the two events must be "very close." *Clark Cnty School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citations omitted). Additionally, a plaintiff who relies on temporal proximity to establish a causal connection must produce evidence of the decision maker's knowledge of the protected activity. *Ramirez v. Gonzales*, 225 F. App'x 203, 210 (5th Cir. 2007).

Although temporal proximity can in some circumstances establish the causation element of a *prima facie* case of retaliation, in the present case, Granderson does not indicate that the timing between the two events is very close; indeed, he does not even specify the exact month in which he

complained to Mr. Fitzpatrick regarding the alleged discrimination he suffered. *See Clark Cnty School Dist.*, 532 U.S. at 273 (holding that the temporal proximity between two events must be "very close" to indicate a causal connection); Granderson Aff., App. 6, ¶ 56 (stating that he complained to Mr. Fitpatrick "[a]round February or March of 2011."). Furthermore, Granderson has not produced any evidence revealing that the individual who terminated him knew of the protected activity, as is required of a plaintiff who relies on temporal proximity to establish a causal connection in such claims. *Ramirez*, 225 F. App'x at 210. Moreover, the overwhelming evidence in this case establishes that Granderson was terminated because he struggled completing his assignments in a timely and adequate manner and made several substantial errors that suggested he was unable to reliably perform his duties. Recommendation for Termination, Chase Supp. App. 49–52.

Lastly, the Court is unpersuaded by Granderson's argument that Chase would have terminated his employment earlier if it truly had a legitimate reason for doing so. As reflected in the Recommendation for Termination, which contains a long list of Granderson's errors and misconduct, Granderson failed to meet many of Chase's performance expectations. Recommendation for Termination, Chase Supp. App. 49–52. However, he received additional training and support so as to improve his skills and maintain his employment. *Id.* The performance plan on which Granderson was placed in August 2010 indicates that Chase did not intend to terminate Granderson at the first sign of his difficulties adhering to the department's policies, but rather wished to assist him and give him opportunities to improve. The fact that Granderson was terminated after it became apparent that the performance plan and Written Warning did not yield the expected results simply suggests that Chase terminated Granderson after exhausting all possibilities for assisting him. Thus, Granderson's assertion that a termination is legitimate only if it occurs directly after an employee's

misconduct in no way advances his argument that he was terminated as a result of a protected activity.

Because Chase has established that Granderson fails to provide sufficient evidence of a causal link between a protected activity and his termination, the Court finds that he fails to make out a *prima facie* case of retaliation. Consequently, the Court **GRANTS** Chase's Motion for Summary Judgment as to Granderson's retaliation claim.

## IV.

## CONCLUSION

For the foregoing reasons, Chase's Motion for Summary Judgment (doc. 20) is **GRANTED.** Because Granderson's Motion for Summary Judgment and Objection to Defendant's Motion for Summary Judgment (doc. 40) is construed as a Response to Chase's Motion for Summary Judgment rather than as his own Motion for Summary Judgment, it is **DENIED.**

The Court therefore **ORDERS** Granderson's claims against Chase **DISMISSED WITH PREJUDICE.**

SO ORDERED.

SIGNED: February 23, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE